# United States District Court
# District of Minnesota

---

UNITED STATES FIDELITY AND GUARANTEE INSURANCE COMPANY, et al.,

Plaintiffs,

v.

**MEMORANDUM AND ORDER**
Civil. File No. 01-CV-399 (MJD/JGL)

COMMERCIAL UNION MIDWEST INSURANCE COMPANY, et al.,

Defendants.

---

Jeannie Provo-Petersen, Gregory J. Johnson, and Klay C. Ahrens, Johnson Provo-Peterson, LLP; and John D. McKenna, L'Abbate, Balkan, Colavita & Contini; for Plaintiffs.

Douglas Ray Archibald, Terhaar and Megan D. Hafner, Terhaar, Archibald, Pfefferle & Griebel, LLP; for Defendants Commercial Union Midwest Insurance Company and American Employers' Insurance Company.

---

## I. INTRODUCTION

This matter is before the Court on cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. All three plaintiffs, United States Fidelity and Guarantee Insurance Company, Catherine Rootness, and Payless Cashways, Inc. (collectively, "Plaintiffs"), move for summary judgment against Defendant Commercial Union

Midwest Insurance Company. Defendants American Employers' Insurance Company and Commercial Union Midwest Insurance Company ("Defendants") move for summary judgment against Plaintiffs on all claims against them. The Court heard oral argument on the motions for summary judgment on January 16, 2004.

## II. BACKGROUND

Defendant KamCo Incorporated ("KamCo"), formerly known as WBL Services, Inc., is a contracting company that installs lighting displays and does re-merchandising work. In May 1997, KamCo contracted with Plaintiff Payless Cashways, Inc. ("Payless"), doing business as Knox Lumber Company, to do re-merchandising work at Payless's stores, including the Payless store in Newport, Minnesota. The Supplementary Terms and Conditions Agreement between KamCo and Payless stated that KamCo would obtain $2,000,000 in liability coverage naming Payless as an additional insured.

Plaintiff Catherine L. Rootness is trustee for the heirs and next of kin of Brent A. Hincher, deceased. In 1997, Hincher, a KamCo employee, was killed in an accident at Payless's store in Newport, Minnesota. At the time of the accident, Hincher was performing re-merchandising work under the terms of the contract between Payless and KamCo. Payless then filed for bankruptcy.

Rootness, on behalf of Hincher's heirs and next-of-kin, commenced a wrongful death action against Payless in 1998. The case was removed to this Court. Payless

asserted a third-party claim against KamCo on the grounds that KamCo was liable to defend and indemnify Payless under the terms of the contract between them. In June 1999, Payless and KamCo entered a Stipulation in which Payless waived its claim against KamCo for reimbursement of Payless's defense costs in the wrongful death lawsuit. They also agreed that, if the Court found that the indemnity provision of the Supplementary Terms and Conditions Agreement was enforceable, KamCo's indemnity obligation to Payless was limited to the fault which Payless proved against KamCo in the action. In October 1999, this Court issued an order finding that the Supplementary Terms and Conditions Agreement were part of the contract between Payless and KamCo. The order was not appealed.

In November 1999, Payless's insurer, United States Fidelity and Guarantee Insurance Company ("USF&G"), tendered Payless's defense of the Hincher lawsuit to KamCo's insurers, Commercial Union Midwest Insurance Company ("Commercial Union") and American Employers' Insurance Company ("American"). Both insurers refused the tender. In early 2000, the estate entered a Pierringer settlement with KamCo. After trial, the jury apportioned negligence among KamCo, Payless, and Hincher. KamCo was 22% at fault, Payless was 60% at fault, and Hincher was 18% at fault. Thus, Rootness, on behalf of Hincher's estate, obtained a judgment approximately of $720,000 against Payless. Under Payless's bankruptcy plan, the portion of Payless's payment that was subject to Payless's self-insured retention of $200,000 was to be paid

in stock in place of cash, unless it was determined that Commercial Union or KamCo owed Payless defense and indemnity.

Pending Rootness's appeal to the Eighth Circuit Court of Appeals, Payless and Rootness settled the case. Payless paid its $200,000 self-insured retention in stock. USF&G paid $750,000 towards the settlement and had contributed to Payless's defense fees and costs. KamCo, American, and Commercial Union refused to contribute to the settlement.

Defendant Commercial Union issued a two million dollar ($2,000,000) umbrella policy with KamCo as the insured. Although the policy does not specifically name Payless as an additional insured, it does state that the 'insured' includes:

> Any person or organization with whom or with which you [KamCo] have agreed in writing prior to any loss "occurrence" or "offense" to provide insurance such as is afforded by this policy, but only with respect to your operations or facilities you own or use.

Commercial Union Policy PZDZ68352, Form No. G10650 05 87 at II(3). As decided by this Court's 1999 order, KamCo agreed to provide liability insurance covering Payless.

Defendant American issued a $1,000,000 commercial general liability policy with KamCo as the insured. American denied that its policy extended liability coverage to Payless and the policy did not name Payless as an additional insured.

In 2001, Plaintiffs commenced the current lawsuit against American, Commercial Union, and KamCo. Plaintiffs sued KamCo for breach of contract for failing to name Payless as an additional insured. Plaintiffs sued American for breach of its duty to

defend Payless in the wrongful death action and for breach of good faith and fair dealing with USF&G for failing to contribute to the judgment and defense of Payless. Plaintiffs sued Commercial Union for breach of contract for failing to pay the judgment against Payless, for bad faith for failing to fulfill its contractual obligations to Payless as an additional insured, and for breach of good faith and fair dealing with USF&G for failing to contribute to the judgment and defense of Payless. Rootness sought recovery from Commercial Union and American of the $200,000 that Payless paid in stock instead of cash.

Plaintiffs USF&G, Rootness, and Payless seek summary judgment concluding that Commercial Union was obligated to defend and indemnify Payless for Hincher's wrongful death claim, and thus must reimburse USF&G and Payless for the defense fees and costs incurred in that action, totaling over $260,000. They also seek a ruling that Commercial Union must reimburse Plaintiffs $940,000 for the settlement payment (the $950,0000 settlement amount less the $10,000 self-insured retention limit of the Commercial Union policy). Additionally, Plaintiffs allege that because Commercial Union breached its obligation to defend and indemnify Payless in the wrongful death suit, it must reimburse Payless and USF&G for the attorney's fees and costs incurred in the present lawsuit.

Defendants seek summary judgment concluding that neither Payless nor USF&G can recover money from Commercial Union for the settlement, the attorney's fees in the

wrongful death action, or the attorneys' fees in this case. Defendants also seek summary judgment stating that Payless was not an additional insured on the American policy. Finally, they seek summary judgment dismissing Rootness's claim for $200,000.

## III. DISCUSSION

### A. Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

The interpretation of the language of an insurance contract is a legal question for the court to decide. White Consol. Indus., Inc. v. McGill Mfg. Co., Inc., 165 F.3d 1185, 1190 (8th Cir. 1999); Meister v. W. Nat'l Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992).

### B. Commercial Union's Obligation to Pay Payless's Settlement Amount

Plaintiffs Payless and USF&G seek summary judgment in their favor on the issue of Commercial Union's obligation to indemnify Payless in the wrongful death action.

Commercial Union responds with its own motion for summary judgment and asks the Court to find that, as a matter of law, it was not required to indemnify Payless or USF&G for the settlement in the wrongful death lawsuit.

**1. Whether the USF&G Policy Qualified as Underlying Insurance**

Plaintiffs argue that the Commercial Union policy extended coverage to Payless, due to the policy language itself and to Commercial Union's written acknowledgment that Payless was an additional insured under the umbrella policy issued to KamCo. They also argue that, due to the drop-down clause in the Commercial Union policy, Commercial Union provided primary coverage for Payless's damages. For the purposes of their motion for summary judgment, Defendants assume that Payless qualified as an additional insured on Commercial Union's policy.

The drop-down provision in the Commercial Union policy states, "We will pay those sums that the 'insured' becomes legally obligated to pay as damages in excess of 'underlying insurance,' or of the 'self-insured retention' [$10,000] when no 'underlying insurance' applies, because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies." Commercial Union Policy PZDZ68352, Form No. G10650 05 87 at I(1)(a). The parties agree that "the insured" includes Payless. "Underlying insurance" is defined as "the insurance policies listed as Underlying Insurance in the Declarations which provide the coverage and limits stated"

and any policies issued to renew or replace those policies, with certain limitations not relevant here. Id. at V(15). The insurance policies listed on the Declarations Schedule of Underlying Insurance are the general liability American policy, an automobile liability Commercial Union Midwest Insurance Company policy, and an employers liability Commercial Union Insurance Company policy. The only possibly applicable underlying insurance policy listed is the American policy. As explained below in section E, Payless was not an additional insured under the American Employers policy. Thus, "no 'underlying insurance' applies" to the damages incurred by Payless, and the Commercial Union policy appears to drop down to cover Payless's claim after the $10,000 self-insured retention.

### 2. The "Other Insurance" Provisions

#### a. The Policy Language

The resolution of liability is complicated, however, by Commercial Union's "other insurance" clause. An insurance policy must be read as a whole so as to give effect to all of its provisions. Associated Ind. Dealers, Inc. v. Mutual Serv. Ins. Cos., 229 N.W.2d 516, 520 (Minn. 1975); Steele v. Great W. Cas. Co., 540 N.W.2d 886, 888 (Minn. Ct. App. 1995). "When provisions of a policy conflict with an endorsement or rider, the provisions of the endorsement govern." Steele, 540 N.W.2d at 888. Reasonable doubts as to the meaning of the language of the policy should be construed against the insurer, but courts may not read ambiguity into the plain language of the

policy in order to construe it against the insurer. Bobich v. Oja, 104 N.W.2d 19, 24 (Minn. 1960).

Commercial Union claims that its policy does not drop down because, due to its "other insurance" provision, it is excess to the USF&G policy: it only began to pay after the policy limits of the other policy were first exhausted. Commercial Union's "other insurance" clause, as amended by the endorsement, states:

> Paragraph 11. Other Insurance of SECTION IV – CONDITIONS is deleted and replaced with the following:
>
> a. If at the time of loss you have other insurance upon the same plan, terms, conditions and provisions as contained in this policy, we shall be liable for no greater proportion of any loss than the limit of insurance under this policy bears to the whole amount of insurance covering the loss.
>
> b. If there is other insurance, other than as provided above, which applies to the loss, we pay only for the excess of the amount due from such other insurance, whether collectible or not.

Commercial Union Policy PZDZ68352, Endorsement G12093 07 91. According to Commercial Union, under clause (b), the USF&G policy constitutes "other insurance, other than as provided above, which applies to the loss." USF&G responds that, due to its own "other insurance" clause, its policy is excess to the Commercial Union policy. The USF&G policy states, "This insurance is excess over other insurance whether primary, excess, contingent or on any other basis, except other such insurance purchased

specifically to apply in excess of this insurance." USF&G Policy No. 30025335000, Form UC 2001 0195 at K

Thus, the Commercial Union policy, an umbrella policy, and the USF&G policy, an excess policy, each claim to be excess over the other. Because each insurer claims to be excess over the other, the Court must first determine "whether the language of the 'other insurance' clauses at issue in these policies conflict with each other." Carolina Cas. Ins. Co. v. Burbach, 354 F.3d 929, 931 (8th Cir. 2004) (citing Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 587 (Minn. 2003)). If they do not conflict, the Court's inquiry ends and the Court "must apply the policy provisions as they are written." Id. If the clauses do conflict, the Court may then look beyond the language of the policies to determine the insuring intent. Id.

**b. Whether the "Other Insurance" Provisions Conflict**

Each insurer argues that its insurance policy is excess over the other and only begins to pay for the loss after the policy limits of the other policy are first exhausted. In order to determine which policy is excess, courts first examine whether the language in the policies regarding which policy is excess are in conflict.

Plaintiffs note that the USF&G policy purports to be excess over all other insurance "whether primary, excess, contingent or on any other basis," regardless of who the insured was. Thus, the US&G policy purports to be excess over any insurer that covered Payless's loss, even if the insurer was an excess insurer such as Commercial

Union.

Plaintiffs argue that, in contrast, the Commercial Union policy did not state that the liability coverage that it afforded to Payless would be excess. Both parties agree that the term "you," in clause (a) of the Commercial Union policy, only applies to the named insured, KamCo. It does not apply to Payless. Thus, clause (a) states that the Commercial Union policy is only pro rata with other insurance belonging to KamCo, not with insurance belonging to Payless. Payless's insurer, USF&G, did not qualify as "other insurance" in clause (a). Under clause (a), KamCo had no "other insurance upon the same plan, terms, conditions and provisions." Thus, there was no other qualifying insurance under clause (a).

Clause (b) of the Commercial Union policy does not contain the limiting term "you." By the plain language of clause (b), the Commercial Union policy purports to be excess over any other insurance policy that applies to the loss, whether belonging to KamCo or to Payless. Thus, the Commercial Union policy purports to be excess over the USF&G policy, because the USF&G policy applies to Payless's loss. Plaintiffs contend that although clause (b) does not contain the limiting term "you," clause (b) relates back to and is dependent on clause (a).

The Court finds, however, that "you," applies to clause (a). First, clause (a) and clause (b) are separate sentences. Clause (a) specifies the "other insurance" that it is addressing by requiring (1) that it be insurance possessed by the named insured ("you"),

and (2) that the other insurance be "upon the same plan, terms, conditions and provisions." Clause (a) does not designate that the other insurance "applies to the loss," but rather depends on the limiting requirements found in (1) and (2) to identify the other insurance. On the other hand, clause (b) identifies the other insurance as insurance that "applies to the loss," and treats such insurance differently from the insurance found in clause (a) (excess as opposed to pro rata). Clauses (a) and (b) are separate provisions, addressing different types of insurance, and treating those different types of insurance differently. Clause (b) contains no limiting reference to "you." The Court finds that clause (b) is not ambiguous and is not limited by the term "you." Under clause (b), the Commercial Union policy purports to be excess over the USF&G policy.

The Court determines that the "other insurance" provisions of the policies do conflict. Thus, the Court must determine which policy is closer to the risk.

**3. Which Policy Is Closer to the Risk**

When the other insurance clauses of two applicable policies are in conflict, courts apply the closest-to-the-risk or total policy insuring intent test to determine which policy is primary. Garrick v. Northland Ins. Co., 469 N.W.2d 709, 712 (Minn. 1991). Under the total insuring intent test, courts determine coverage by examining "the primary policy risks and the primary function of each policy." Id. Under the closest-to-the-risk test, courts ask which policy specifically described the accident-causing instrumentality; which premium reflects contemplation of greater exposure; and which policy

contemplates the risk and the use of the accident-causing instrumentality with greater specificity. Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co., 567 N.W.2d 71, 80-81 (Minn. Ct. App. 1997).

Plaintiffs contend that under either test, Commercial Union's policy should be the primary policy. Plaintiffs note that KamCo contractually agreed to procure liability insurance on behalf of Payless. The Commercial Union policy specifically contemplates that it would afford liability coverage to those customers for whom KamCo had agreed in writing to provide insurance, such as Payless. Commercial Union Policy PZDZ68352, Form No. G10650 05 87 at II(3) (stating that an "insured" includes "[a]ny person or organization with whom or with which you have agreed in writing prior to any loss, 'occurrence' or 'offense' to provide insurance such as is afforded by this policy, but only with respect to your operations or facilities you own or use"). Although no premium was specifically applied to coverage for Payless, Plaintiffs assert that a portion of KamCo's premium to Commercial Union presumably factored in the exposure that Commercial Union would face if one of its additional insureds was sued.

Plaintiffs also assert that a majority of jurisdictions give controlling effect to one insured's promise to indemnify and procure liability insurance for another party, over a literal reading of the 'other insurance' clauses. Although, as Plaintiffs argue, many cases state that courts should consider indemnity agreements when determining the priority of payment between the insurers, the cases cited by Plaintiffs are distinguishable. First,

most of the cases cited by Plaintiffs do not apply Minnesota law. See Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 588-94 (8th Cir. 2002) (applying Arkansas law); Rossmoor Sanitation, Inc. v. Pylon, Inc., 532 P.2d 97 (Cal. 1975) (applying California law); J. Walters Constr., Inc. v. Gillman Paper Co., 620 So.2d 219 (Fla. Ct. App. 1993) (applying Georgia law). Under Minnesota law, when two insurers claim to be excess insurers, Minnesota courts use the total policy insuring intent and or the closest-to-the-risk test to determine which policy is primary. Garrick, 469 N.W.2d at 712; Redeemer Covenant Church of Brooklyn Park, 567 N.W.2d at 80. In the one case cited by Plaintiffs that does apply Minnesota law, Continental Casualty Co. v. Auto-Owners Insurance Co., 238 F.3d 941 (8th Cir. 2000), the Court did not address a situation analogous to the situation at hand. In Continental, the Court addressed two applicable insurance policies, neither of which had other insurance clauses. Based on the policy language, which was tied to the indemnity agreement, the Court found that the policies were not in conflict and thus, did not reach a closest-to-the risk analysis.

Second, the cases cited by Plaintiffs rely on the impact of the indemnity agreements on which party would eventually pay for the damages. For example, in Wal-Mart, the Eighth Circuit expressed its concern that the parties would engage in circuitous actions by enforcing the indemnity provisions in the underlying vendor agreement, because the indemnity agreements between the supplier and owner would ultimately lead back to the insurer for the supplier. Wal-Mart Stores, Inc., 292 F.3d at 587, 593-94.

In this case, however, Payless and KamCo have entered into a stipulation regarding indemnity. Payless has agreed that it will not seek defense cost from KamCo and that it will not seek indemnity from KamCo beyond losses caused by KamCo's fault, as determined in the previous lawsuit. See Stipulation dated June 28, 1999, ¶¶ 5-7. Even if the indemnity agreement were still in effect, it would have limited Payless's recovery in a situation like the current case, in which a jury has already apportioned fault between the parties. The indemnity provision in the KamCo-Payless contract states that KamCo would only indemnify Payless "the portion of the total loss that was attributable to fault of [KamCo.] . . . If the degree of relative fault between [KamCo] and [Payless] is determined by adjudication . . . it shall be binding on the parties for the purposes of this clause . . ." Supplementary Terms and Conditions Agreement ¶ 5. Thus, in this case, there is no risk of a circuitous action because KamCo is not liable to Payless for the damages attributable to Payless's fault.

Plaintiffs also argue that the Commercial Union policy was issued to a company, KamCo, that was engaged in the business of "Hang[ing] Displays." Commercial Union Policy PZDZ68352, Declarations, and that Hincher was killed while working for KamCo and hanging displays. The USF&G policy on the other hand was intended to cover Payless's liability as a "Building Supplies" business. USF&G Policy No. 30025335000, Form No. UG 1000 0195. Plaintiffs assert that Hincher's death would not have occurred in the absence of KamCo's contractual undertakings and KamCo's

work at the Payless store in Newport, Minnesota. Thus, the Commercial Union policy was closer to the risk. Plaintiffs' reasoning overlooks the fact that Payless's settlement payment is related to a judgment payed on behalf of Payless for its liability as determined by a jury. KamCo's liability was separately allocated and paid. The jury determined that Payless was sixty percent at fault and that KamCo was twenty-two percent at fault. The amount of fault attributable to KamCo has been eliminated from the payment made by Payless and USF&G on Payless's behalf.

Additionally, Payless was the named insured on the USF&G policy and Payless paid the premium to USF&G for protection from damages resulting from its own negligence. In contrast, Payless was not a named insured on Commercial Union's policy and the policy was issued to KamCo primarily to cover KamCo for damages resulting from KamCo's negligence. No specific premium was paid to provide coverage to Payless under the Commercial Union policy and Payless was not named in the Commercial Union policy. The Commercial Union policy's coverage of Payless was only incidental.

The USF&G policy was primarily designed to cover the risk of losses caused by Payless's fault - Payless was the named insured, the policy was intended to cover Payless's business operations, and the premium was paid for that purpose. The Commercial Union policy was primarily intended to cover KamCo's own negligence. Although Payless was an insured under the Commercial Union policy, it was not a

named insured and no specific premium was paid add Payless to the policy. The loss for which Payless and USF&G now seek to recover was solely caused by Payless's own negligence. Although Hincher's accident did occur in the course of KamCo's "Hang Display Service" business, it also occurred in connection with KamCo's "Building Supplies" business. The accident was the fault of both businesses and both activities, but the loss for which Payless now seeks to recover is the portion of the damages caused solely by Payless and its own actions. The Court determines that the USF&G policy was closer to the risk than the Commercial Union policy. Thus, the USF&G policy was primary for Payless's loss.

**4. Whether Self Insurance Qualifies as Underlying Insurance**

In the alternative, Plaintiffs argue that at a minimum, the Commercial Union policy dropped down to pay the first $200,000 of the wrongful death settlement, because Payless did not have any other insurance available to pay the first $200,000 of any settlement or judgment entered against it. USF&G only agreed to "pay . . . in excess of the 'self-insured retention,'" which amounted to $200,000 after the $350,000 self-insured limit was allocated by the Bankruptcy Court.

Plaintiffs claim that self insurance does not qualify as insurance. See, e.g., Consol. Edison Co. of New York v. Liberty Mut., 749 N.Y.S.2d 402, 403-04 (N.Y. Sup. Ct. 2002). Thus, Plaintiffs argue, Commercial Union was the only insurer that afforded coverage for the first $200,000 of the settlement and it became the primary

insurer. Under this reasoning, Commercial Union must pay the first $200,000 of the wrongful death settlement, less the $10,000 self-insured retention

The Court does not agree. While the majority view may be that self insurance does not qualify as "other insurance," Minnesota courts have stated that self insurance should be treated as regular insurance. See, e.g., McClain v. Begley, 465 N.W.2d 680, 682 (Minn. 1991) ("Self-insurance is the functional equivalent of a commercial insurance policy."); State Farm Mut. Auto. Ins. Co. v. Budget Rent-A-Car Sys., Inc., 359 N.W.2d 673, 676 (Minn. Ct. App. 1984) ("[The self insurer] made a risk management decision not to buy coverage for the first $100,000. To treat [the self insurer] as anything other than an insurer for the first $100,000 would create a windfall for [the self insurer]."). See also Transp. Indem. Co. v. Carolina Cas. Ins. Co., 652 P.2d 134, 145-46 (Ariz. 1982) (holding that a self-insured retention does not affect the construction of an excess insurance clause); Hillegass v. Landwehr, 499 N.W.2d 652, 656 (Wis. 1993) (holding that "self insurance constitutes 'other collectible insurance'"). The Court finds that the Commercial Union policy did not provide primary coverage for the first $200,000 of Payless's settlement amount covered by Payless's self-insured retention.

### C. Commercial Union's Obligation to Defend Payless in the Wrongful Death Lawsuit

Plaintiffs Payless and USF&G seek summary judgment in their favor holding that Commercial Union must reimburse Payless and USF&G for the attorneys' fees and costs

that each spent defending the wrongful death lawsuit. Commercial Union responds with its own motion for summary judgment holding that, as a matter of law, it is not required to reimburse Payless or USF&G for the attorneys' fees and costs spent defending the wrongful death lawsuit. (Commercial Union also argues that even if it were obligated to pay the defense fees incurred by Plaintiffs, Plaintiffs could only recover the fees related to the Hincher claim that were incurred after Payless tendered the underlying lawsuit to Commercial Union in November 1999. Absent compelling circumstances, insurers are not liable for defense fees and costs incurred prior to tender of defense of a lawsuit to the insurer. Domtar, Inc. v. Niagra Fire Ins. Co., 563 N.W.2d 724, 739 (Minn. 1997).)

Plaintiffs argue that Commercial Union was contractually obligated to defend Payless in the underlying wrongful death action because the Commercial Union policy stated that it had the "duty to defend any claim or 'suit' seeking damages to which this insurance applies, but only with respect to damages . . . [n]ot covered by 'underlying insurance' or by any other valid and collectible insurance." Commercial Union Policy PZDZ68352, Form No. G10650 05 87 at I(2)(b). As explained earlier in this opinion, the Court found that the USF&G policy provided primary coverage for the damages sought and paid as settlement in the underlying lawsuit, and that Payless's $200,000 self-insured retention did not cause the Commercial Union policy to drop down for the first $200,000 of damages. Thus, the damages sought in the underlying lawsuit were covered by "other valid and collectible insurance," and Payless and USF&G are not

entitled to recover the defense fees and costs that it incurred in defending against the underlying lawsuit.

**D. Commercial Union's Obligation to Pay the Costs of the Current Lawsuit**

Plaintiffs also assert that Commercial Union is liable for the costs and attorney's fees that Plaintiffs have incurred in prosecuting this lawsuit against Commercial Union for its wrongful refusal to defend and indemnify Payless in the underlying wrongful death lawsuit. Because Plaintiffs have not succeeded in their lawsuit against Commercial Union, they are not entitled to recover attorney's fees and costs.

**E. Whether Payless Is an Additional Insured on the American Policy**

American moves for summary judgment holding that, as a matter of law, Payless cannot be considered an additional insured under the American policy. American argues that Payless cannot be considered an additional insured, because Payless was not named as an additional insured on the policy and because there is no evidence that KamCo ever requested that Payless be named as an additional insured. Plaintiffs contend that Payless should be deemed an additional insured on the grounds that American should have added Payless as an additional insured, because it knew that KamCo routinely entered into contracts that required KamCo to add its customers as additional insureds. They assert that American generally added KamCo's customers as additional insureds when KamCo notified American of KamCo's contractual obligation to do so.

According to Plaintiffs, KamCo's office manager sent a list of certificate holders

to KamCo's insurance agency in January 1997. The list included Payless's name. (Payless's name is crossed out on the version of the list submitted to the Court.) KamCo's insurance agent saw Payless's name on the list, but had no discussions regarding whether Payless should be named as an additional insured. If KamCo had asked to name a company as an additional insured, the agency would have sent a change request to KamCo's insurer, and then would have sent the additional insured endorsement along with an invoice for the fifty dollar premium to KamCo. Plaintiffs argue that the agency should have inquired about seeing Payless's name on the certificate list, and that, if it had, Payless would have been an additional insured for a mere fifty dollars.

Minnesota case law precludes Plaintiffs' argument. Under Minnesota law, a person or organization will not be considered an additional insured on a policy unless the insured actually requests that the party be named as an additional insured and the insurance company, or its agent, agrees. St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp., 321 N.W.2d 41, 45 (Minn. 1982). In St. Paul School District, a bus company breached its contract with a school district ("District") by failing to name the District as an additional insured on the bus company's insurance policy. The bus company provided a certificate of insurance to the District, but did not name the District as an additional insured. Id. at 43. The district court held that the District was entitled to be added to the policy as an additional insured, because the insurer would have

allowed the addition had the bus company requested it and because the bus company's premiums would not have changed as a result of the addition of the District as an additional insured. Id. at 44-45. The Minnesota Supreme Court reversed the district court's decision and held, "It is essential to the formation of a contract of insurance that there be mutual assent of the parties." Id. at 45. The bus company never requested that the District be added as an additional insured on the policy, and the insurer never assented to such an addition. Id. Insurance coverage will not be found "whenever a plaintiff can show that a mere request to the insurance company would have resulted in the issuance of a policy." Id.

In this case, in order to have added Payless as an additional insured, KamCo would have had to make a request to American and would have had to pay an additional fifty dollar premium. Even if Plaintiffs could raise a genuine issue of material fact regarding whether Payless should have been named as a certificate holder, their claim would not survive summary judgment. Under St. Paul School District No. 625, 321 N.W.2d at 46, an insured must actually request that another party be named as an additional insured and the insurer must assent to that request. The fact that a party possesses a certificate of insurance does not qualify that party as an additional insured, and Plaintiffs do not claim that KamCo requested that Payless be added as an additional insured or that American agreed to such a request. Thus, Payless was not an additional insured under the American policy.

In the alternative, Plaintiffs assert that American is obligated to reimburse USF&G for the attorney's fees and costs in the underlying lawsuit because Section I(A)(2)(b)(2) of the American policy extended coverage to Payless's attorney's fees:

> [R]easonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or property damage', provided:
>
> (a) Liability to such party for, or for the cost of, that party's defenses has also been assumed in the same 'insured contract'; and
>
> (b) Such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

American Policy No. AZR533689, Form CG 00 01 0196 at I(A)(2)(b)(2). Other than Plaintiffs' quotation of the above section of the American policy, the parties do not address the applicability of this clause.

The Court concludes that American is not required to reimburse USF&G or Payless for the attorney's fees and costs spent in the underlying lawsuit. The quoted section of the American policy merely states that the attorney fees and costs described in (a) and (b) can constitute damages, and if the insured, KamCo, becomes legally obligated to pay those damages, American will pay those sums. This section of the American policy does not create a duty to defend. Additionally, in order to qualify as damages, the attorney's fees and costs must be for the defense of a party in a proceeding in which damages are alleged that are covered by the American insurance policy. As explained above, the American policy did not cover damages for which Payless was

liable, because Payless was not an additional insured under the American policy. Thus, American is not required to reimburse USF&G or Payless for the attorney's fees and costs expended on Payless's behalf in the underlying lawsuit.

The Court finds that Payless was not an additional insured under the American policy and that American is not required to reimburse USF&G for attorney's fees and costs. Thus, Defendants' motion for summary judgment on the claims against American is granted.

## IV. CONCLUSION

In summary, the Court finds that Commercial Union did not breach its duty to defend and indemnify Payless in the underlying lawsuit. Thus, Plaintiffs are not entitled to recover the money paid for settlement of the claims against Payless in the underlying lawsuit, for the attorney's fees and costs incurred in the underlying lawsuit, or for the attorney's fees and costs incurred in the current lawsuit. Finally, Payless was not an additional insured under the American policy, and all claims against American are dismissed.

**IT IS HEREBY ORDERED** that:

1) Defendants' Motion for Summary Judgment [Docket No. 32] is **GRANTED**;

2) Plaintiffs' Motion for Partial Summary Judgment [Docket No. 39] is **DENIED**.

Dated: February 19, 2002

______________________________________

Judge Michael J. Davis
United States District Court